James A. FOURNIER, Husband of Deceased Wife, Rachel Fournier, for and on Behalf of Himself and Deceased's Daughter, Billie Burt DeLaughter, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3296.

United States District Court
S. D. Mississippi,
Jackson Division.

Aug. 24, 1963.

Abe Rotwein, Jackson, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for defendant.

WILLIAM HAROLD COX, Chief Judge.

This is a suit under the Federal Tort Claims Act (28 U.S.C.A. § 2674) and the Mississippi Actionable Death Statute (§ 1453 Code 1942). The plaintiff is suing for the accidental death of his wife and for the use of himself and her daughter. The plaintiff is a member of an officers' mess or club on a military reservation in Jackson. This couple visited this facility for dinner and mixed drinks on the evening of December 7, 1960, when decedent was fatally injured while leaving the building about 10:45 that evening. There were no eyewitnesses to the accident.

## FINDING OF FACTS

The decedent and her husband (plaintiff) visited the officers' mess club in Jackson on the evening of December 7, 1960, for dinner and mixed drinks. The decedent had at least eight full-sized drinks between her arrival and departure from the building. She knocked over two other drinks at the bar and fell off of the stool and had to be helped back before leaving the building. These facts were not disputed. The testimony shows that she and her husband were served drinks by the bartender in this facility beyond their capacities.

The decedent, while leaving the building in this condition and while descending the front steps to the building, which were not well lighted, slipped and fell a sufficient distance to strike her head against concrete at the base of the steps with sufficient force to cause serious brain damage from and as a result of which she died in a week. These steps were approximately six feet long with approximately eight inch risers and ten inch treads. There were seven treads or steps from the ground to the porch. Hand rails were provided at each end of the steps. The treads were made of two by four timbers which were spaced apart but there was no evidence to show that this construction had anything to do with the accident. The porch between the steps and the front entrance was approximately six feet wide or deep. A drop light with a hundred watt bulb was suspended from the ceiling, but was not burning when this couple arrived at and

was not burning when they left the building. There was no defect in these steps, but the absence of this light on this evening, coupled with the effect of a misting rain on these uncovered steps, made for a dangerous condition, particularly in her condition. This was a dark night. A five hundred watt flood lamp on an adjoining building one hundred twenty feet away shone on these steps to some appreciable degree, but did not reveal sufficient details in the steps to allow for her reasonably safe passage under the circumstances.

The decedent was never more than semi-conscious after her injury at any time prior to her death. She, therefore, did not suffer much appreciable conscious pain. She was forty-nine years of age and according to the 1958 Standard Ordinary Table of Mortality had a life expectancy of 24.45 years. She had a job with a State agency at a monthly salary of $275.00. James A. Fournier, her widower, and Billie Burt DeLaughter, an adult daughter, are her sole heirs.

The City of Jackson leased this building and other buildings to the United States on condition that the government "perform its own maintenance in the area and buildings herein described." The buildings (including this building designated as T–22) were leased for: "military district and organized reserve corps requirements and other requirements of the government." This officers' mess was an integral part of this military establishment and was a non-appropriated fund instrumentality. It was operated exclusively from gross receipts from the sale of food and intoxicating beverages on the premises. Only military personnel, their family and guests, were served. This mess was operated by a civilian manager selected by a military officer in charge of the base. The manager hired and fired all personnel and paid them from the mess hall funds. This light at the head of these steps was controlled by a switch inside the front door. The switch was thrown, but the operator could not see whether or not the light was burning because of draperies on all windows. It is not known how long that bulb was not burning, but earlier in the evening it was reported to the assistant manager in charge of the club at the time that the light was not burning. He undertook to locate a bulb without success and did nothing further about it.

The club was started and maintained by the United States to boost the morale of its service men. The United States paid an annual rent on the building in the amount of one dollar for this building and several other buildings on the reservation. The ranking army officer in charge of the base promulgated the policies and rules and regulations of the operation, but paid no attention to the details of the business.

■■ The decedent died as a proximate result of the negligence of the United States in its operation of this Federal agency. Such negligence consisted of overloading the decedent with intoxicating beverages on the evening of December 7 and allowing her to leave the building unassisted and down such rather high steps which were not safely lighted for her use in such condition. Such state of intoxication was voluntary and self-induced by the decedent. She noticed the wet steps when she entered the building and noticed the absence of the light above the steps at such time and was guilty of contributory negligence in undertaking to leave the building unassisted as she did. The plaintiff expended $2,773.30 for her expenses and burial occasioned by this accident. The plaintiff and Billie Burt DeLaughter are entitled to an award of $12,500 (for their equal use and enjoyment) which is determined to be due the plaintiff and the daughter of the decedent after charging the decedent with being 50% responsible for her own demise.

## CONCLUSIONS OF LAW

■ This suit is properly brought against the United States under 28 U.S. C.A. § 2674 known as the Federal Tort Claims Act. That the United States is liable for such negligence as in the case at bar for the death of this decedent is

made clear by United States v. Holcombe, (4CA) 277 F.2d 143. Cf: Rizzuto v. United States, (10CA) 298 F.2d 748.

 There were no actual eyewitnesses to this fatal fall, but the deceased was left by her husband on the porch only a minute or two before she fell. Significantly, he went inside the club to do something about the light on the porch above the steps not burning. A witness heard the thud of her fall and immediately rushed to her to find her crumpled at the foot of the steps and bleeding from both ears. Circumstantial evidence and the facts as shown by eyewitnesses, plus reasonable inferences, are inescapable and conclusive to the effect that she became overbalanced and lost her footing and slipped and fell down the greater part of these steps with seven treads. A fact is established by circumstantial evidence where the trier is not obliged to resort to conjecture or surmise to any degree in reaching the conclusion. See authorities collated in Denman v. Denman, Miss., 134 So.2d 457.

The doctrine of res ipsa loquitur has no application here, if for no other reason than that the decedent so materially contributed to her own fatal injury on this occasion.

It was the implied duty of the United States to exercise reasonable care to make the use of these steps reasonably safe to these business guests on this occasion. Significantly, alcoholic beverages cannot be legally sold or served in Mississippi, but the United States was promoting and aiding and assisting in the violation of state laws on this occasion. Doubtless every member of this mess or club was also jointly and severally liable for this accident. Strangely enough, it is not against the law in Mississippi to drink intoxicating beverages. Hutson v. Hutson, 239 Miss. 413, 123 So.2d 550. But § 2613 Mississippi Code 1942 makes it unlawful to "sell or barter, or give away or keep or have in * * * possession" intoxicating liquor. The decedent was thus not in pari delicto with this unlawful business on this occasion, but she is chargeable with her own negligence in being intoxicated and thereby proximately contributing to her death. She thereby contributed to her own fatal injury, and was equally responsible with defendant therefor, and her damages should be and have been so reduced proportionally according to Mississippi law. § 1454 Code 1942.

The plaintiff may present a judgment for entry against the defendant in the principal amount of $12,500 with 6% interest after date of judgment and all costs of suit to be taxed.